# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHNNY PEREZ, | Civil No. 3:25-cv-2134 |
| Plaintiff | (Judge Mariani) |
| v. | |
| LAUREL HARRY, *et al.*, | |
| Defendants | |

## MEMORANDUM

Plaintiff Johnny Perez ("Perez"), an inmate confined at the State Correctional Institution, Camp-Hill, Pennsylvania ("SCI-Camp Hill"), initiated this action pursuant to 42 U.S.C. § 1983. (Doc. 1). Perez seeks to proceed *in forma pauperis*. (Doc. 5).

The complaint is presently before the Court for preliminary screening. For the following reasons, the Court will dismiss Perez's complaint pursuant to 28 U.S.C. § 1915A(b)(1) without prejudice and grant him leave to file an amended complaint.

## I. Legal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted[,]" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b)(1), (2). The Court has

a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim under 28 U.S.C. § 1915A(b), 28 U.S.C. § 1915(e)(2), or 42 U.S.C. § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 F. App'x 705, 706 (3d Cir. 2012) (*per curiam*); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,...a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but...disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment

3

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

Because Perez proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## II. The Complaint

In the complaint, Perez names the following Defendants: Secretary Laurel Harry, Superintendent Kendell, Deputy Superintendent Albert, Deputy Superintendent Jennifer McClellan, Major Kevin Bly, Major Ross Miller, Corrections Classification Program Manager ("CCPM") Lacosta Mussoline, CCPM Erin Miller, Lieutenant Mohn, Unit Manager Dodson, Counselor Roth, Captain Baptiste, Captain Elwell, Lieutenant Eddon, Correctional Officer Allison, Correctional Officer Reyes, Correctional Officer Garcia, and Sergeant Shruggs. (Doc. 1, at 1).

Perez alleges that on October 15, 2025, he and another inmate entered a fellow inmate's cell to play a joke on him. (Doc. 1, at 1-2). As a result, Perez got into a "verbal altercation" with Correctional Officer Garcia, who called him names and allegedly informed Perez that he was being placed in the Restricted Housing Unit ("RHU"). (*Id.*). Perez alleges that he was placed in the RHU in a dirty cell, he was exposed to excessive amounts of Oleoresin Capsicum ("OC") spray, and mail was not promptly collected from the inmates'

4

cells. (*Id.* at 3-4). He also alleges that, on November 4, 2025, Captain Elwel searched his housing unit, Lieutenant Eddon "interfered" during the search, and non-defendant correctional officers confiscated his personal items. (*Id.* at 4-5). Perez claims that other inmates informed him that Captain Allison "thinks she's above the law and went in [his] cell and was in there alone." (*Id.* at 5). Perez asserts that he informed the Program Review Committee ("PRC")—consisting of Defendants McClelland, Bly, Miller, Mussoline, Miller, Dodson, and Roth—of his living conditions and the failure to provide any reason or notice for his placement in the RHU. (*Id.* at 5). The PRC members allegedly informed Perez that the conditions did not "look bad[.]" (*Id.*). Perez also wrote to Lieutenant Smith about these events. (*Id.* at 6).

The complaint does not set forth any factual allegations against Secretary Laurel Harry, Superintendent Kendall, Deputy Superintendent Albert, Lieutenant Mohn, Captain Baptiste, Correctional Officer Reyes, or Sergeant Shruggs, and does not allege that these individuals were involved in the alleged events.

Perez asserts that Defendants violated a multitude of his rights, including violation of equal protection, violation of due process, conspiracy, cruel and unusual punishment, defamation, harassment, violation of the code of ethics, violation of the Public Official and Employee Ethics Act, violation of the State Adverse Interest Act, and violation of The Americans with Disabilities Act. (*Id.* at 2, 7).

5

Perez seeks monetary relief, court costs, attorney's fees, and an inspection of the prison. (*Id.* at 2).

## III. Discussion

### A. Claims against Secretary Laurel Harry, Superintendent Kendall, Deputy Superintendent Albert, Lieutenant Mohn, Captain Baptiste, Correctional Officer Reyes, and Sergeant Shruggs

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be premised merely on the fact that the

6

named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Id.* at 1207.

Perez has named Secretary Laurel Harry, Superintendent Kendall, Deputy Superintendent Albert, Lieutenant Mohn, Captain Baptiste, Correctional Officer Reyes, and Sergeant Shruggs as Defendants (*see* Doc. 1, at 1), but he does not mention them anywhere in the body of his complaint. Perez is obligated to explain how each individual named as a Defendant was personally involved in the violation of his constitutional rights, whether due to the prison official's own misconduct or the official's deliberate indifference to known deficiencies in a policy or procedure that violated Perez's rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds, Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Because Perez fails to mention Secretary Laurel Harry, Superintendent Kendall, Deputy Superintendent Albert, Lieutenant Mohn, Captain Baptiste, Correctional Officer Reyes, and Sergeant Shruggs in the body of his complaint, he has not stated a plausible basis for imposing liability against them and any claims against them will be dismissed without prejudice. *See Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant because complaint did not provide any basis for a claim against him).

To the extent that Perez seeks to hold these individuals liable based on their supervisory roles, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat*

7

*superior*. *See Rode*, 845 F.2d at 1207. Thus, Perez's claims against Secretary Laurel Harry, Superintendent Kendall, Deputy Superintendent Albert, Lieutenant Mohn, Captain Baptiste, Correctional Officer Reyes, and Sergeant Shruggs based on a *respondeat superior* theory of liability are also subject to dismissal.

> B. Claims against Correctional Officer Garcia, Captain Elwel, Lieutenant Eddon, Correctional Officer Allison, Deputy Superintendent McClelland, Major Bly, CCPM Miller, CCPM Mussoline, Major Ross Miller, Unit Manager Dodson, and Counselor Roth

Perez has failed to state a plausible claim against any of the remaining Defendants. As stated, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207). Moreover, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes*, 766 F.3d at 316, *reversed on other grounds by Taylor*, 575 U.S. 822. First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, 'a supervisor may be personally liable under §

8

1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Id.*

Perez alleges that he got into a verbal altercation with Correctional Officer Garcia and Garcia informed him that he was being placed in the RHU. (Doc. 1, at 2-3). Once in the RHU, Perez alleges that he was placed in a dirty cell, exposed to excessive amounts of OC spray, and that inmate mail was not promptly collected from their cells. (*Id.* at 3-4).

With respect to the cell search on November 4, 2025, Perez asserts that "Capt. Elwel decided to search our section[,]" Lieutenant Eddon "took it upon himself to interfere[,]" non-defendant correctional officers confiscated his personal items, and Captain Allison was in his cell "alone." (*Id.* at 4-5). Perez also alleges that he wrote to Lieutenant Smith about these events. (*Id.* at 6).

### 1. Eighth Amendment Claim against Garcia

Perez alleges that Correctional Officer Garcia verbally threatened him and was profane. (Doc. 1, at 2-3). Garcia's alleged statements or threats to Perez, without *any* accompanying physical injury, do not amount to malicious behavior violative of the Eighth Amendment. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *Quiero v. Muniz*, No. 14-225, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not

9

cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."). This claim fails because Perez cannot state a claim for cruel and unusual punishment under the Eighth Amendment by alleging only verbal harassment or threats.

### 2. Fourteenth Amendment Claim against Garcia

Perez also appears to assert a Fourteenth Amendment equal protection claim against Correctional Officer Garcia for his alleged statement that Perez was being placed in the RHU, but the fellow inmate who also "played a...joke" was not being placed in the RHU. (Doc. 1, at 3). Other than this conclusory statement, there are no other factual allegations in the complaint which suggest that Correctional Officer Garcia acted with an intent or purpose to discriminate against Perez. In order to state an equal protection violation, Perez must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Perez's conclusory allegation that Correctional Officer Garcia discriminated against him by placing him in the RHU, without more, does not plausibly state a claim for a violation of the Equal Protection Clause. *See Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient). The Court will dismiss Perez's equal protection claim against Correctional Officer Garcia without prejudice.

*See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").

### 3.   Supervisory Claims against Elwel, Eddon, and Allison

To the extent that Perez included Captain Elwel, Lieutenant Eddon, and Captain Allison as Defendants simply because they hold supervisory positions, any claims against them based on their supervisory positions would nonetheless be implausible because liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho*, 423 F.3d at 354) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'").

### 4.   Fourteenth Amendment Due Process Claim against McClelland, Bly, Miller, Mussoline, Miller, Dodson, and Roth

Insofar as Perez asserts a Fourteenth Amendment due process claim against the Program Review Committee Members—McClelland, Bly, Miller, Mussoline, Miller, Dodson, and Roth—based on their failure to transfer him back to general population, any such claim

11

fails. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). In the prison context, such liberty interest is interpreted narrowly, and the Supreme Court has concluded that the Constitution provides no liberty interest in, among other things, remaining in the general population, *see Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); staying at a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 225-27 (1976); remaining in a particular prison within a state, *see Olim v. Wakinekona*, 461 U.S. 238, 245-47 (1983); or any particular security classification, *see Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement). *See also Chavarriaga*, 806 F.3d at 225 ("A state has broad authority to confine an inmate in any of its institutions."). Accordingly, insofar as Perez seeks relief for failure to transfer him to general population, he has not set forth a plausible constitutional claim against the Program Review Committee Members—McClelland, Bly, Miller, Mussoline, Miller, Dodson, and Roth—and these claims will be dismissed without prejudice.

### 5.     Fourteenth Amendment Due Process Claim

Perez also claims that his placement in the RHU violated his right to procedural due process under the Fourteenth Amendment because he did not receive proper notice related to his confinement in the unit. (Doc. 1, at 3). He further claims that, while in the RHU, he was placed in an unclean cell and exposed to OC spray. (*Id.* at 3-4).

To state a procedural due process claim, the inmate-plaintiff must allege facts to support that he has a liberty or property interest that is protected by the Fourteenth Amendment. *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (citations omitted). Under this standard, the Court only reaches the issue of the adequacy of the procedural process provided if the inmate-plaintiff first establishes an interest protected by the Due Process Clause of the Fourteenth Amendment. *See Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010) (instructing that a court reviewing a procedural due process claim first determines whether the plaintiff raises an interest protected by the Fourteenth Amendment and, if such an interest exists, then whether the procedures provided to the plaintiff afforded that individual due process of law) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Perez's due process claim fails at the first step of the analysis because the complaint does not allege facts to support a protected interest.

"It is well-settled that placement in administrative confinement will generally not create a liberty interest." *Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014); *see also Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) ("Because administrative

13

segregation is the sort of confinement that [plaintiff] should reasonably anticipate receiving at some point in his incarceration, his transfer to less amenable and more restrictive quarters does not implicate a liberty interest protected by the Due Process Clause.") (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)). Rather, "[i]n a prison context, due process protection is limited to those situations where the deprivation rises to the level of an 'atypical and significant hardship on inmate in relation to the ordinary incidents of prison life.'" *Thomas v. Rosemeyer*, 199 F. App'x 195, 197 (quoting *Sandin*, 515 U.S. at 484). "Such a hardship exists if the circumstances of a prisoner's confinement fall[ ] outside of the expected parameters of comparable confinement." *Williams*, 566 F. App'x at 108. The United States Court of Appeals for the Third Circuit has found that confinement in restrictive housing for periods from 120 days up to 15 months was not an "atypical or significant hardship." *Id.* at 108 (120 days); *Thomas*, 199 F. App'x at 197-98 (270 days); *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (7 months); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (15 months).

Perez alleges a due process violation based on an approximate one-month stay in the RHU. He does not allege any facts to support that his disciplinary detention in the RHU imposed an atypical and significant hardship upon him such that the Fourteenth Amendment required due process protections. *See Diaz v. Canino*, 502 Fed. Appx. 214, 217 (3d Cir. 2012) (holding that state inmate's placement in the RHU for 360 days of disciplinary confinement did not impose an atypical and significant hardship on inmate to

14

implicate a protected liberty interest, and thus the alleged procedural deficiencies at a misconduct hearing did not violate the inmate's due process rights, even if the inmate was exposed to continuous searches, subjected to regular relocation of his cell, and was unable to sleep as a result of lights that remained turned on in RHU).

Perez also asserts a liberty interest based on the adverse effects he experienced because of his exposure to OC spray and unsanitary cell conditions. (Doc.1, at 3-4). On the issue of significant hardship, a court must consider the nature of the prison conditions in relation to the ordinary incidents of prison life. *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 563 (3d Cir. 2017). The exposure to OC spray and its resulting adverse effects may support a protected liberty interest only if they imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. Under the facts alleged here, Perez's exposure to OC spray cannot be considered an atypical and significant hardship. "The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." *Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2014) (citation omitted). Pennsylvania law also recognizes that OC spray is a reasonable tool available to corrections officers to respond to an inmate's refusal to comply with legitimate directions. *See* 61 Pa. C.S.A. § 5907. And an inmate's exposure to unsanitary cell conditions does not constitute a substantial risk of serious harm and, thus, cannot be considered an atypical and significant hardship based on the facts alleged in Perez's

complaint. *See, e.g., Gilblom v. Gillipsie*, 435 F. App'x 165, 169 (3d Cir. 2011) (denying conditions of confinement claim when inmate spent approximately thirty-six hours in a cell with his own excrement). The conditions of which Perez complains reflect typical restrictions in administrative custody. Moreover, the conditions, while perhaps unpleasant, do not present any atypical or significant hardship on Perez in relation to the ordinary incidents of prison life. In light of Perez's failure to establish a protected liberty interest, his procedural due process claim will be dismissed.

### 6. Claims against Smith

Finally, the only specific allegation Perez asserts against Lieutenant Smith is that he wrote to him about his placement in the RHU and the conditions in the RHU, and that Smith never contacted him about his complaints. (Doc. 1, at 6). Perez's purported attempt to assert a civil rights claim against Lieutenant Smith based on the handling of his complaints or grievances is not plausible because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Accordingly, the facts alleged by Perez about Lieutenant Smith's failure to respond to his complaints or grievances does not give rise to a plausible basis for a constitutional claim and will be dismissed. *See also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance

process, [a prisoner] cannot maintain a constitutional claim...based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances.").

## IV.  Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. Leave to amend may be denied based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds that the pleading deficiencies of Perez's complaint are largely factual in nature and thus conceivably could be cured by an amended pleading. Therefore, Perez will be granted the option of filing an amended complaint to attempt to cure the defects discussed above.[1]

---

[1]  If Perez chooses to file an amended complaint, it must be a complete document that does not rely on the initial complaint, or other papers filed in this case.

## V.     Conclusion

Consistent with the foregoing, the Court will grant Perez leave to proceed *in forma pauperis* and will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) without prejudice. The Court will allow Perez leave to file one all-inclusive amended complaint.

A separate Order shall issue.

    Robert D. Mariani
    United States District Judge

Dated: January 5, 2026